**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Case No. 13-30829 (RG) |
| GREENBROOK ASSOCIATES, LTD., | Chapter 11 |
| Debtor. | Hearing Date: February 10, 2014, at 11:00 a.m. |

**OBJECTION AND MEMORANDUM OF LAW ON BEHALF OF
SPENCER SAVINGS BANK, SLA IN SUPPORT OF OBJECTION
TO PROPOSED PLAN OF REORGANIZATION AND IN FURTHER
SUPPORT OF MOTION FOR RELIEF FROM STAY**

SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
*Attorneys for Spencer Savings Bank, sla*

On the Brief:
    Vincent F. Papalia
    John M. August

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................1

    A.   The Expired "Commitment" Letter...........................................................................1

    B.   The Debtor Cannot Eliminate or Disregard the Bank's Assignment
        of Leases Until the Bank is Paid in Full .................................................................3

STATEMENT OF FACTS ...............................................................................................3

    A.   The Bank's Loan to the Debtor...............................................................................3

    B.   The Relevant Terms of Absolute Assignment ........................................................4

    C.   The Debtor's Plan...................................................................................................5

    D.   Summary of Argument............................................................................................7

LEGAL ARGUMENT......................................................................................................8

**POINT I**
THE DEBTOR'S PROPOSED PLAN IS UNCONFIRMABLE AS IT PURPORTS
TO USE THE RENTS TO FUND THE PLAN WITHOUT PAYING THE BANK'S
CLAIM IN FULL .............................................................................................................8

    A.   The Assignment Creates a Separate and Distinct Property Interest..........................9

**POINT II**
THE DEBTOR'S PROPOSED PLAN IS UNCONFIRMABLE AS IT IS NOT FEASIBLE
AND IT VIOLATES 11 U.S.C. §1129(b)(3) ....................................................................13

    A.   The Debtor's Plan is Not Feasible .........................................................................13

    B.   The Debtor's Proposed Plan is Not Fair of Equitable as it Improperly Seeks to
        "Extinguish" the Bank's Valid Absolute Assignment.............................................13

CONCLUSION................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

**CASES**

First Fidelity Bank, N.A. v. Eleven Hundred Metroplex Assocs.,
190 B.R. 510 (S.D.N.Y. 1995)................................................................10, 11

First Union National Bank v. Penn Salem Marina, Inc.,
190 N.J. 342 (2007) ...................................................................................6

In re Cordova,
500 B.R. 701 (D.N.J. 2013) .......................................................................11

In re Jason Realty, L.P.,
59 F. 3d 423 (3d Cir. 1995)............................................................ *passim*

In re: A & P Diversified Technologies Realty, Inc.,
467 F.3d 337 (3d Cir. 2006)......................................................................12

In re: TCI 2 Holdings, LLC,,
428 B.R. 117 (Bankr. D.N.J. 2010) ...........................................................15

New Jersey Nat'l Bank & Trust Co. v. Wolf,
108 N.J. Eq. 412 (Ch. 1931) ......................................................................9

Sovereign Bank v. Schwab,
414 F.3d 450 (3d. Cir. 2005)......................................................................10

**STATUTES**

11 U.S.C. §101(37) .........................................................................................14

11 U.S.C. §1129(a) (3)....................................................................................15

11 U.S.C. §1129(a) (11) ..................................................................................13

11 U.S.C. §1129(b) (2) (A)........................................................................13, 14

11 U.S.C. §1129(b)(3) .....................................................................................13

## PRELIMINARY STATEMENT

The proposed Plan of Reorganization (the "Plan") of Greenbrook Associates, Ltd. (the "Debtor") is fatally flawed as it hinges upon: (i) an expired "commitment" letter -- for a 13% interest only loan with a one year term – that does not obligate the proposed lender to make a loan unless and until the lender completes a due diligence investigation "to its sole and absolute satisfaction;" and (ii) the evisceration of Spencer Savings Bank, sla's (the "Bank") valid and enforceable Assignment of Leases with respect to the subject property, as well as the complete disregard of the express terms of the Bank's Assignment and the holdings of <u>Jason</u> <u>Realty</u>. For these reasons, and those that follow, the Debtor's Plan should not and cannot be confirmed.

## A.     The Expired "Commitment" Letter

The December 26, 2013 Commitment Letter from ARC Funding, LLC ("ARC Funding") attached to the Debtor's Combined Plan of Reorganization and Disclosure Statement (the "Plan") as Exhibit D (the "Commitment Letter") expired by its own terms on December 30, 2013. The Commitment Letter was agreed to and accepted by the Debtor's representative on January 8, 2014, after it had already expired. Despite repeated requests to Debtor's counsel for copies of any new or extended commitment letter, none has been provided. Without proof of an extension or new commitment letter, confirmation should be denied on this ground alone.

The many substantive flaws and/or open issues with regard to the "Commitment" Letter do not end there, as there are several important qualifications and conditions to the proposed Loan, none of which has been addressed by the Debtor. Significantly, the asserted $875,000 loan amount cannot "exceed 70% of the 'as is' loan to value based upon a review of the appraisal prepared by Regency Property Appraisers, dated December 14, 2013. The updated appraisal will be performed by <u>an appraiser acceptable to Lender in its sole discretion</u>." See Ex.

D. at p. 1. (emphasis supplied). No appraisal or review appraisal by the Lender has been provided, nor is there any indication as to what that valuation may be. In this regard, it is important to keep in mind that the Debtor's own fair market value appraisal of the subject property in "as is" condition as of October 5, 2013 was $750,000.[1] See, Exhibit A to Plan. At a 70% loan to value ratio, this valuation would yield only $525,000 in financing under the Lender's formula.

Further, the Commitment Letter is subject to the Lender's due diligence as to a wide range of matters, including an MAI certified appraisal, a Phase I environmental report, the Debtor's financial statements and credit information, and any other reports the Lender may deem necessary, all of which are to be paid for by the Debtor. Id. at p. 2. This review would (or could) obviously include a review of the current leases with respect to the Property and the creditworthiness of the tenants. Again, there is no indication as to whether any of this information has been provided to the Lender (and it certainly has not been provided to the Bank) or whether the Lender satisfactorily completed its due diligence review.[2]

In short, a review of the Commitment Letter's plain terms reveals that it has expired and in no way obligates the proposed lender to advance $875,000 to the Debtor. Instead, the lender, ARC Funding, will lend only up to 70% of the value determined by ARC's own appraisal -- obviously critical information which has not been provided to the Court or to the Bank. Further, the Commitment is subject to ARC's due diligence review, as to which no

---

[1]    The Debtor also relies on a second appraisal performed by the same appraiser that somehow yields a fair market valuation of $1,250,000 in "as is" condition as of December 14, 2013 -- just two months later. See, Exhibit C to Plan. This purported increased valuation of $500,000 (or 66⅔%) in two months is an unvarnished attempt to literally have it both ways as to the value of the subject property.

[2]    The Debtor similarly is also obligated to pay a 3.0% "Loan Fee" of $26,250 (3% x $875,000), which apparently has not yet been paid.

information has been provided, and which according to the Commitment had <u>not</u> <u>even</u> <u>begun</u> until the Debtor's representative signed the Commitment on January 8, 2014. Unless this additional information is provided and the due diligence review completed to the new lender's satisfaction, there is no Commitment Letter or basis on which the Debtor's Plan could possibly be confirmed.

**B. The Debtor Cannot Eliminate or Disregard the Bank's**
**<u>Assignment of Leases Until the Bank is Paid in Full</u>**

The proposed Loan "Commitment" -- and the Debtor's Plan -- are based upon the "extinguishment" of the Bank's Assignment of Leases, the validity of which has already been determined by this Court. In fact, the elimination of the Assignment is a cornerstone of the Debtor's Plan, as ARC Funding seeks those leases and rents as security for its loan and the Debtor seeks to use those rents to fund its Plan <u>and</u> pay the loan. However, the applicable case law, including <u>Jason</u> <u>Realty</u> and its progeny, and the express terms of the Bank's Assignment, say otherwise, as they make clear that the Assignment: (i) is a separate and distinct element of the Bank's security for its loan; (ii) the rents generated by the subject property do <u>not</u> constitute property of the estate and may <u>not</u> be used to fund the Debtor's Plan; (iii) pursuant to its express terms, the Assignment remains in effect until the Bank is fully paid; and (iv) the Assignment survives any default by the Debtor and the entry of a foreclosure judgment.

For these reasons, the Debtor's Plan is not feasible and therefore unconfirmable as a matter of law (and as a matter of fact).

<u>STATEMENT OF FACTS</u>

**A. <u>The Bank's Loan to the Debtor</u>**

The Bank is the holder of a Loan, evidenced by a Note, dated August 20, 2009, made by Greenbrook Associates, Ltd. ("Debtor") in the original principal amount of

$750,000.00, and secured by a Mortgage on the Debtor's only asset -- the commercial office building located at 132 West Greenbrook Road, North Caldwell, New Jersey (the "Mortgaged Property). (Copies of the Note and Mortgage are attached as Exhibits A and B to the Certification of Douglas A. Rettew, dated October 21, 2013 and filed at Docket No. 19-6 (the "Rettew Cert.")).[3] In connection with the Loan, the Debtor executed and delivered to the Bank an Absolute Assignment of Rents, Income, Profits and Leases (the "Absolute Assignment"), thereby absolutely and unconditionally assigning to the Bank all of its right, title and interest in and to all rents, income and profits from the Mortgaged Property (the "Rents"). As of the Petition Date, the amount due on the Loan was not less than $996,943.89. (See Certification re Calculation of Amounts Due, dated October 21, 2013 and filed at Docket No. 19-5).

On November 12 2013, this Court conducted an initial hearing on the Bank's motion for relief from stay or, in the alternative to dismiss the Debtor's case (the "Motion"). During that hearing, the Court found that the Absolute Assignment absolutely and unconditionally assigned and transferred to the Bank full title to all of the Debtor's existing and future Rents and that, pursuant to New Jersey law surveyed by the Third Circuit in In re Jason Realty, L.P., 59 F. 3d 423 (3d Cir. 1995), the Rents are the property of the Bank, not property of the Debtor's estate. This Court's Interim Order expressly provides that the Rents are the property of the Bank (the "Interim Order"). [Docket No. 29]

B.      **The Relevant Terms of Absolute Assignment**

The Absolute Assignment secures:

A.      The payment of the principal sum, interest and indebtedness evidenced by a certain Mortgage Note ("Note"), and any amendments, extensions or renewals thereof, in the original principal sum of SEVEN HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($750,000.00)

---

[3]    Capitalized terms not defined herein have the meaning set forth in the Rettew Cert.

made by Assignor, and dated as of the date hereof. The Note is secured by inter alia a Mortgage and Security Agreement ("Mortgage") executed simultaneously herewith on the real property described in Schedule A and about to be recorded;

B.       Payment of all other sums with interest thereon becoming due and payable to the Assignee under the provisions of this Assignment or of said Note or Mortgage; and

C.       The performance and discharge of each and every obligation, covenant and agreement of the Assignor contained herein or in said Note or Mortgage or any other instrument and/or agreement between Assignor and Assignee.

(See Absolute Assignment, pg. 1-2).

The Absolute Assignment is effective unless and until all amounts secured thereby are paid in full. (Id., pg. 4, ¶ 5). Additionally, the Assignment provides that the Bank's entitlement to the Rents survives entry of a foreclosure judgment:

11.       The rights of the Assignee to collect and receive the rents assigned hereunder, or to exercise any of the rights or powers granted to the Assignee herein, shall extend, not only to the period before and after default by Assignor hereunder, but to the period following the filing of any action to foreclose the lien of the Mortgage, from and following the filing of any action to foreclose the lien of the Mortgage, including any period following the entry of a foreclosure judgment and any period allowed by law for the redemption of the Property following foreclosure sale.

(Id., pg. 5, ¶ 11). (emphasis supplied).

## C.       The Debtor's Plan

The Debtor's Plan does not take issue with the validity or priority of the Bank's loan documents, including the Assignment, and recognizes that the Bank has a claim of not less than $996,943.89, as memorialized in a money judgment (the "Law Division Judgment"), and that the Bank also obtained a final judgment in foreclosure pre-petition (the "Foreclosure Judgment"). (Plan, Art. I, §1.7, pg. 2-3). The amount of the Foreclosure Judgment as of the

Petition Date was not less than $881,703.39. (See accompanying Supplemental Certification of John M. August, dated January 3, 2014 filed at Docket No. 35-1. (the "Supp. August Cert."), at ¶ 4).[4]

In the Plan, the Debtor incorrectly claims that the Bank's claim is unimpaired when, in truth, the Debtor seeks to significantly impair the Bank's claim and security by "extinguishing" the Assignment. Rather than leaving the Bank's claim unimpaired, the Debtor proposes to pay only the Foreclosure Judgment in full on the effective date and the balance of the Bank's secured claim (i.e., the difference between the Law Division Judgment and the Foreclosure Judgment) over six years as an unsecured claim. (Plan, Art. II, §§ C.1 and C.3, pg. 6-7). The Plan states that paying the Foreclosure Judgment in full will extinguish the Absolute Assignment, thereby entitling the Debtor to use the Rents to fund the Plan, including the payment of balance of the Bank's claim over time. (Plan, Art. II, § C.5, pg. 8). Thus, the Debtor incorrectly characterizes the Bank's claim as unimpaired when in reality the Bank's claim is being substantially impaired and modified by eliminating a key and distinct component of its security.

Specifically, with regard to the amounts due and owing to the Bank, the Plan provides:

> On June 19, 2013, Spencer Savings Bank obtained a final judgment of foreclosure in the amount of $850,336.23, plus attorney fees of $8,475.00 and subsequent advances. On July 12, 2013, Spencer Savings Bank obtained a money judgment on its claim for money damages in the amount of $923,542.19 plus interest at the

---

[4]  The amount of a Law Division judgment on a note ordinarily differs from the amount of a foreclosure judgment on a mortgage because the actions may encompass different time periods and may seek different categories of damages. See First Union National Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 351-52, 355 (2007) (noting that there are important differences between a foreclosure action and an action on a note and holding that issue preclusion does not prohibit a lender from recovering amounts on one judgment that accrues after the date of the other judgment or from recovering different categories of damages on each judgment).

per diem rate of $177.76 from June 1, 2013 through July 12, 2013, plus attorney
fees of $61,408.46.

(Plan, Art. I, §1.7, pg. 2-3).

Under "Classes of Secured Claims," the Plan provides that the Bank is unimpaired and that the Foreclosure Judgment will be paid in full on the effective date, less post petition rents turned over. (Plan, Art. II, § C.1, pg. 6). Under "Class of General Unsecured Claims," the Plan provides that the total amount of unsecured claims equals $414,217.04 which amount includes "balance of Spencer Savings Bank money judgment after deducting payment on Class 1 secured claim." (Id., § C.3, pg. 7). The Plan proposes a 100% distribution on the general unsecured claims over six years. (Id.)

Under "Treatment of Spencer Savings Bank Assignment of Rents," the Plan provides that the Absolute Assignment will be extinguished at the time the Foreclosure Judgment is paid in full. (Id., § C.5, pg. 8). Under "Funding for the Plan," the Plan states that payments to Class 1 and 2 creditors will be made from the proceeds for the new loan secured by the Mortgaged Property and capital contributions of the members of the Reorganized Debtor, while the Class 5 general unsecured creditors will be paid from the operating revenues of the Reorganized Debtor, i.e., the Rents. (Id., § E.1, pg. 8).

D.      **Summary of Argument**

As is described below, the Plan is unconfirmable because it attempts to circumvent the Absolute Assignment (and Jason Realty) by eliminating the Assignment and using the Rents to fund the Plan without paying the Bank's claim, as memorialized in the Law Division Judgment, in full. Paying the Foreclosure Judgment will not extinguish the Absolute Assignment. By its own terms, the Absolute Assignment survived the entry of Foreclosure Judgment and is valid and effective until all sums secured by the Absolute Assignment are paid

in full.  This is in accord with well-settled law providing that assignments are interests in real property separate and distinct from mortgages.  The Mortgage created a lien in the Mortgaged Property to secure the Loan.  The Absolute Assignment secured the Loan by transferring title to the Rents to the Bank.  This rental stream, owned by the Bank, is distinct from the Bank's lien on the Mortgaged Property.

In sum, the Absolute Assignment is valid, and the Bank owns the Rents, until all amounts the Debtor owes to the Bank are paid in full.  This includes the amount due on the Law Division Judgment.  Until this amount is paid in full, the Debtor may not use the Rents to fund its Plan.[5]  Nor may the Debtor "extinguish" the Bank's Assignment without payment in full of its entire claim, under the plain language of the Assignment and the clear holdings of Jason Realty and the many courts in this Circuit that have uniformly followed that decision.  Accordingly, the Debtor's Plan is not confirmable.

## LEGAL ARGUMENT

## POINT I

### THE DEBTOR'S PROPOSED PLAN IS UNCOMFIRMABLE AS IT PURPORTS TO USE THE RENTS TO FUND THE PLAN WITHOUT PAYING THE BANK'S CLAIM IN FULL

The Absolute Assignment at issue in this case, similar to the assignment in the Jason Realty case, transferred ownership of the Rents to the Bank.  The Absolute Assignment is fatal to the Debtor's ability to fund a plan because the Rents are the Debtor's sole source of income.  In an attempt to circumvent this dispositive limitation, the Plan proposes to extinguish the Absolute Assignment by paying the Foreclosure Judgment in full and the balance of the Bank's claim over six years; that is, it purports to use the Rents to fund the Plan without paying

---

[5]There is no reason for the Bank to accept less than payment in full because, by reason of the Debtor's own appraisal attached as exhibit C to the Plan, the Mortgaged Property is worth $1,250,000.00.  Thus, the Bank is over secured and is entitled to payment in full.

8

the Law Division Judgment in full. The Plan is unconfirmable because paying the Foreclosure

Judgment in full will not extinguish the Absolute Assignment, as a matter of law and under its

express terms. The Plan is also unconfirmable because it purports to leave the Bank's claim

unimpaired yet, in reality, it seeks to eliminate a key element of the Bank's security.

**A.**      **The Assignment Creates a Separate and Distinct Property Interest**

Under New Jersey law, mortgages and assignments of rent are distinct interests in

real property. A mortgage creates a lien on real property generally to secure the payment of a

debt. The collateral for the mortgage is the real property. On the other hand, an assignment of

rents transfers title to the rents to the assignee upon its execution; it does not simply create a lien.

New Jersey Nat'l Bank & Trust Co. v. Wolf, 108 N.J. Eq. 412, 413-14 (Ch. 1931)

(distinguishing between an assignment and a mortgage or pledge of rents and providing that an

assignment is independent of a mortgage). This key distinction was noted and relied upon by the

Third Circuit in the Jason Realty case, 59 F.3d 423, 427 (3d Cir. 1995).

An assignment may also be used to secure payment of a debt, but it is distinct

from a mortgage or a pledge of rents. In Jason Realty, the Third Circuit explained how the

operation of a mortgage differs from an assignment upon a default on the underlying debt:

> Under New Jersey law, a mortgagee with an assignment of rents is entitled
> to enforce its assignment and collect the rents upon default without taking
> possession of the property or seeking the appointment of a receiver.
> *Stanton, Winslow*.

Jason Realty, 59 F. 3d at 430, n.3. That distinction is particularly important in this case because

under the well-established law of this Circuit, the Absolute Assignment transferred full title to

the Debtor's existing and future rents, income, profits, leases and other agreements affecting the

use, enjoyment or occupancy of all or any part of the Mortgaged Property. Thus, the leases and

rents derived from the Mortgaged Property, which the Debtor absolutely assigned to the Bank,

are the property of the Bank and are <u>not</u> property of the Debtor's estate. <u>See</u>, <u>e.g.</u>, <u>In re Jason Realty, L.P.</u>, 59 F.3d at 429 (3d Cir. 1995) and <u>Sovereign Bank v. Schwab</u>, 414 F.3d 450, 455 (3d. Cir. 2005).

In this regard, the Third Circuit cautioned against confusing the rights of an assignee with those of a mortgagee:

> Under New Jersey law, however, such a goal [of assisting a debtor's recovery] cannot be reached by merging the rights of an assignee of leases with those of a mortgagee. ***These concepts are not fungible, but embrace separate and distinct attributes of property law, as well as degrees of gradation of title and basic differences as to how and when title passes between the debtor and the secured creditor.*** Thus, in the case at bar, although it was clear that First Fidelity was proceeding as an assignee of leases, the bankruptcy judge refused to follow the teachings of Commerce Bank on the basis that mortgages are treated differently in New Jersey than in Pennsylvania: Pennsylvania is "a title state and not a lien state." App. at 149. ***The judge confused assignee apples with mortgagee oranges.***

<u>Jason Realty</u>, 59 F. 3d at 429 (emphasis added).

In <u>First Fidelity Bank, N.A. v. Eleven Hundred Metroplex Assocs.</u>, 190 B.R. 510, 511 (S.D.N.Y. 1995), then District Court Judge Sonia Sotomayor, citing to <u>Jason Realty</u> and enforcing an absolute assignment under New Jersey law, surveyed the New Jersey law on assignments and emphasized the distinctions between an assignment and a mortgage. "[T]he legal status of the assignment remained distinct from that of the mortgage. The assignment … was additional security and independent of the mortgage security." <u>Id.</u>, at 512 (quoting <u>Stanton v. Metropolitan Lumber Co.</u>, 107 N.J. Eq. 345, 348 (Ch. 1930)).

Judge Sotomayor, citing the District Court opinion in <u>Jason Realty</u> written by the Hon. Anne E. Thompson, Chief U.S.D.J., explained that an assignment used to secure a note provides a greater degree of security than a <u>mortgage</u>. "An absolute assignment and a license to the assignor may certainly be used to secure a note; they simply provide the creditor with <u>a</u>

greater degree of security than a lien." Eleven Hundred Metroplex Assocs., 190 B.R. at 513

(emphasis supplied) (quoting First Fidelity Bank, N.A., v. Jason Realty, L.P., 1994 WL 774537,

at *4 (D.N.J.), aff'd, 59 F.3d 423, 429 (3d Cir.1995)).

Recently, our District Court, affirming an order entered by the Hon. Novalyn L.

Winfield, U.S.B.J., which relied upon Jason Realty to enforce an absolute assignment, again

emphasized the distinction between lender as mortgagee versus lender as assignee:

> Here, and throughout, I use the term "lender," because it is inevitably a
> lender who stands in these shoes. It is important to remember that the
> holding of Jason applies to the lender, not in its capacity as lender, but in
> its capacity as assignee. The distinction is important because, although a
> secured creditor/ lienholder may have important rights in the bankruptcy
> case, a pre-petition assignee is an owner whose claim is that the property
> is not part of the bankruptcy estate at all. It is for this reason that the Jason
> Realty opinion states at the outset that "[t]he major question for decision is
> whether the assignment was an absolute assignment, as interpreted by the
> district court, or a collateral pledge, as construed by the bankruptcy court."
> 59 F.3d at 425.

In re Cordova, 500 B.R. 701, 702, n.1 (D.N.J. 2013). The District Court noted the concerns

expressed in Jason Realty that absolutely assigned rents may not be used to fund a plan and

further emphasized that, "[t]hose concerns are particularly appropriate because New Jersey

follows the lien theory, not the title theory, of mortgages. ***Consequently, the rights of a***

***mortgagee as secured creditor are very different from the rights of a title holder, such as a pre-***

***petition absolute assignee."*** Id., at 707, n.11 (emphasis added).

Based on the this well-settled law, it is clear that the Absolute Assignment in this

case is distinct from, and independent of, the Mortgage, and prevents the Debtor from using the

Rents to fund a Plan. In the Plan, which seeks to extinguish the Absolute Assignment by paying

the Foreclosure Judgment in full, the Debtor makes the precise mistake that Jason Realty

cautioned against by attempting to merge the Bank's rights as mortgagee with the Bank's distinct

rights as assignee.  The Debtor is confusing "assignee apples with mortgagee oranges."  Paying

the Foreclosure Judgment in full will not affect the Bank's separate and independent right as

assignee to the Rents. [6]  As then District Court Judge (now Justice) Sonia Sotomayor recognized

in Eleven Hundred Metroplex Assocs., 190 B.R. at 513, an assignment used to secure a note

provides a different, and greater, degree of security than a mortgage.

By its express terms, the Absolute Assignment is valid, effective and continues

in force until payment of all sums secured by the Absolute Assignment and after entry of a

foreclosure judgment.  (See Absolute Assignment, pg. 4, ¶ 5).  The sums secured by the

Absolute Assignment include, "the principal sum, interest and indebtedness evidenced by a

certain Mortgage Note …, and any amendments, extensions or renewals thereof, … all other

sums with interest thereon becoming due and payable to the Assignee under the provisions of

this Assignment or of said Note or Mortgage; and … any other instrument and/or agreement

between Assignor and Assignee."  (Id., pg. 1-2, ¶'s A, B and C).  These sums include the

amount due on the Law Division Judgment.  Until this amount is paid in full, the Bank owns

the Rents and the Debtor may not use them to fund its Plan.

Accordingly, the Plan is unconfirmable because it purports to use the Rents to

fund the Plan without paying the Law Division Judgment in full.

---

[6]    While the Mortgage merged into the Foreclosure Judgment, the Absolute Assignment did not,
for the reasons noted above.  Under the merger doctrine, a mortgage contract is deemed to merge
into the judgment and the mortgage contract is extinguished.  In re: A & P Diversified
Technologies Realty, Inc., 467 F.3d 337, 341-42 (3d Cir. 2006).  The Absolute Assignment,
which is separate and distinct from the Mortgage and provides the Bank different rights, did not
merge into the Foreclosure Judgment.  Indeed, the Absolute Assignment expressly provides that
it survives the entry of foreclosure judgment. (See Absolute Assignment, pg. 5, ¶ 11).
[Compare, A & P Diversified, 467 F.3d at 343 (finding an exception to the merger doctrine
where the mortgage evidences an intent to preserve the effectiveness of a provision following the
entry of the foreclosure judgment).]

**POINT II**

**THE DEBTOR'S PROPOSED PLAN IS UNCONFIRMABLE AS IT IS
NOT FEASIBLE AND IT VIOLATES 11 U.S.C. §1129(b)(3)**

**A.      The Debtor's Proposed Plan is Not Feasible**

The Debtor's Proposed Plan is also unconfirmable because it is not feasible as currently structured.  See, 11 U.S.C. §1129(a) (11).  First, as noted above, there are many deficiencies in the Debtor's Commitment Letter -- it has expired by its terms, there is no indication as to whether it has been extended and, if so, how much ARC Funding would be willing to lend.  Second, the Debtor's Plan hinges on the use of the rents from the Mortgaged Property to:  (i) provide security to the proposed lender, ARC Funding and (ii) provide for the payments under the proposed Loan <u>and</u> under the Plan.  For the reasons noted above, the Debtor simply is not permitted to do so.

Third, despite the Bank's request, the Debtor has provided virtually no support for its cash flow projections or the creditworthiness of its tenants.  This information is critical to determine the validity of those projections and whether the Debtor really can pay the 13% interest only loan it may receive, and whether it will be able to fully refinance that loan when it expires in just one year.[7]  Thus, the Debtor's Proposed Plan does not satisfy the feasibility requirements of 11 U.S.C. §1129(a)(11).

**B.      The Debtor's Proposed Plan is Not Fair of Equitable as it Improperly
Seeks to "Extinguish" the Bank's Valid Absolute Assignment**

Because the Bank has voted to reject the Debtor's Plan, Debtor must satisfy the "cramdown" requirements of the Code under, <u>inter alia</u>, Section 1129(b) (2) (A), which provides as follows:

---

[7]The Debtor has a right to extend the Loan for six months by paying a renewal fee of 1.5% of the loan, or $13,125. Even if extended, the Debtor must almost immediately begin seeking refinancing for its loan.

(2)     For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A)     With respect to a class of secured claims, the plan provides --

(i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II)     that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363 (k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

Plainly, the Debtor's proposed "extinguishment" of the Bank's valid Absolute Assignment does not -- and cannot -- satisfy any of these requirements.  Since the Plan provides for the elimination of the Bank's Absolute Assignment, it plainly does satisfy 11 U.S.C. §1129(b) (2) (A) (i) as the Bank is not retaining its "lien"[8] and the Bank is not receiving the present value of its claim.  Similarly, subsection (ii) of 1129(b) (2) (A) is plainly inapplicable as the Proposed Plan does not provide for the sale of the Mortgaged Property (subject to section 363(k) or otherwise).

Just as plainly, the "indubitable equivalent" standard of subsection (iii) is not met, as the elimination of a key element of the Bank's security -- the Absolute Assignment

---

[8]The Bankruptcy Code broadly defines "lien" to include a "charge against an interest in property to secure payment of a debt or performance of an obligation."  11 U.S.C. §101(37).

pursuant to which the Bank owns the Rents-- in exchange for an unsecured claim payable over six (6) years without interest is not the indubitable equivalent of the Bank's rights under the Assignment. To provide the "indubitable equivalent" under subsection (iii), the plan must provide something that equals "the unquestionable value of a lender's secured interest in the collateral." In re TCI 2 Holdings, LLC, *et al.*, 428 B.R. 117, 160 (Bankr. D.N.J. 2010).

> Though broad, the phrase "indubitable equivalent" is not unclear. Indubitable means "not open to question or doubt," Webster's Third New Int'l Dictionary 1154 (1971), while equivalent means one that is "equal in force or amount" or "equal in value," *id*. at 769. . . . Thus the "indubitable equivalent" under subsection (iii) is the unquestionable value of a lender's secured interest in the collateral.

Id. (*citing* In re Philadelphia Newspapers, LLC, 599 F.3d 298, 310 (3d Cir.2010)).

Under the Assignment, the rental stream from the Mortgage Property of $11,875 per month (Plan, Exhibit B – Cash Flow Projections), which the Bank owns, is sufficient to satisfy the Bank's claim of $115,240.50, remaining after the Foreclosure Judgment is paid, in under 10 months.[9] The Plan purports to extinguish the Absolute Assignment and instead pay the Bank's claim over six years without interest. This is not the indubitable equivalent. See Id. at 162 (providing that deferred cash payments to a secured lender must bear interest to account for the delay in the payment of the claim).

For these same reasons, the Plan fails to satisfy the requirement of 11 U.S.C. §1129(a) (3) that the Plan be "proposed in good faith and not by any means forbidden by law," and therefore should not be confirmed.

---

[9]  The amount of the Law Division Judgment of $996,943.89 minus the amount of the Foreclosure Judgment of $881,703.39 equals $115,240.50. The Proposed Plan provides for payment in full of the Foreclosure Judgment on the effective date, leaving the balance of $115,240.50 to be paid over time.

**CONCLUSION**

For the foregoing reasons set forth above, and those contained in the papers field by the Bank in support of its Motion for Relief From Stay, <u>see</u> Docket Nos. 19 and 35, the Debtor's Proposed Plan should not be confirmed and the Bank should be granted immediate relief from stay.

Respectfully submitted,

SAIBER LLC
Attorneys for Spencer Savings Bank, sla

By: */s/ John M. August*
      JOHN M. AUGUST

Dated: February 3, 2014